

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

June 13, 2022

**BY ECF & EMAIL**
The Honorable Vincent Briccetti
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

Re:    ***United States v. Pedro Rainey, a/k/a "P," a/k/a "Super Model P,"***
       **S3 20 Cr. 444 (VB)**

Dear Judge Briccetti:

The Government respectfully submits this letter in advance of the sentencing of the defendant, Pedro Rainey, a/k/a "P," a/k/a "Super Model P," currently scheduled for June 16, 2022 at 2:30 p.m. As described below, Rainey participated in a conspiracy that distributed crack cocaine, powder cocaine, heroin, and fentanyl in and around Middletown, New York and eastern Ulster County, New York. Rainey—who is nearly 50 years-old—has had significant contact with the criminal justice system over the course of his life, including multiple narcotics convictions. For this and other reasons described below, he deserves a significant prison sentence. In light of ███████████████████████████████████████████████ the Department of Justice's ("DOJ") recent statements in support of the EQUAL Act, S. 79, however, the Government respectfully submits that a below-Guidelines sentence of 100 months' imprisonment is appropriate in this case. Such a sentence would be sufficient but not greater than necessary to reflect the seriousness of Rainey's conduct, to promote respect for the law, to ensure adequate general and specific deterrence, and to avoid unwarranted sentencing disparities among the defendants in this case.

### A. Factual Background

From at least in or about July 2019 until in or about August 2020, Rainey, along with co-defendant Frank Brown, a/k/a "Nitty," was a leader of a narcotics distribution conspiracy that operated in and around Middletown and Ulster County. PSR ¶¶ 10-14, 19-21. Rainey was involved in street-level drug dealing[1]; supplying narcotics to other drug dealers, such as his co-

---

[1] The Government proffers that, during the life of the charged conspiracy, Rainey sold narcotics to a confidential informant approximately five times. This is not noted in the PSR because the Government neglected to provide this precise figure to the U.S. Probation Office ("Probation"). Nevertheless, Rainey admitted at his change-of-plea proceeding that he sold narcotics to the confidential information on "several occasions." Plea Tr. 37. The transcript from this proceeding,

defendant Raymond Brown; and coordinating his drug dealing operation while he was incarcerated in or about July 2019. PSR ¶¶ 19, 54. During the life of the conspiracy, Rainey also made credible threats of violence against a confidential informant, including by referencing a gun. PSR ¶ 20.

On August 31, 2020, Rainey was indicted for participating in a conspiracy to distribute 280 grams and more of mixtures and substances containing a detectable amount of crack cocaine, in violation of 21 U.S.C. §§ 846 & 841(b)(1)(A); 100 grams and more of mixtures and substances containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 846 & 841(b)(1)(B); and mixtures and substances containing a detectable amount of powder cocaine, in violation of 21 U.S.C. §§ 846 & 841(b)(1)(C). On September 16, 2020, Rainey was arrested. The following day, Rainey was presented before United States Magistrate Judge Paul E. Davison and detained. Rainey has been detained since his arrest.



On March 10, 2022, Rainey pleaded guilty before the Court, pursuant to a plea agreement, to the above-referenced Superseding Information charging him with conspiring to distribute, and to possess with intent to distribute: (1) 28 grams and more of mixtures and substances containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B); and (2) mixtures and substances containing a detectable amount of heroin, fentanyl, and cocaine, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(C).

### B. The Plea Agreement

Based on Rainey's offense conduct and Criminal History Category (IV), the plea agreement calculates a Guidelines range of 151 to 188 months' imprisonment, with a mandatory minimum sentence of 60 months' imprisonment. The calculations set forth in the plea are consistent with the calculations in the PSR.[2] Probation has recommended a sentence of 151 months' imprisonment.

---

which was provided to Probation in advance of its finalization of the PSR, is attached hereto as Exhibit A and incorporated by reference here in.

[2] The Government agrees with Probation that Rainey has nine criminal history points, not eight, as reflected in the plea agreement. PSR ¶ 103. However, as also noted by Probation, the discrepancy does not affect the Guidelines range, as Category IV covers defendants with seven to nine criminal history points. *Id.*

### C. Applicable Law

#### 1. Sentencing

As the Court is well aware, the Sentencing Guidelines still provide strong guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 128 S. Ct. 586, 594 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 596. After that calculation, however, the Court must consider the factors outlined in Title 18, United States Code, Section 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, the need to adequately deter criminal conduct and promote respect for the law, and the need to avoid unwarranted sentencing disparities. *Id.* at 50 & n.6.

### D. Discussion

The Government respectfully submits that a below-Guidelines sentence of 100 months' imprisonment is appropriate in this case. In particular, the nature and circumstances of the offense and the need to promote respect for the law, assure both general and specific deterrence, and avoid unwarranted sentencing disparities among the defendants in this case all justify such a sentence.

#### i. The EQUAL Act

It bears noting at the outset that, as the Court is aware, on June 22, 2021, DOJ provided public testimony in support of the EQUAL Act, S.79. This proposed legislation would eliminate the powder-to-cocaine base sentencing disparity in 21 U.S.C. §§ 841 and 960. Although DOJ supports elimination of the powder-to-cocaine base disparity, until legislation to that effect is passed, the current statutory and guidelines provisions remain in effect.

In this case, the amount of cocaine base attributable to Rainey's criminal conduct is approximately 167 grams, which, in combination with the smaller quantities of other narcotics for which he has accepted responsibility (approximately 60 grams of heroin, 43 grams of powder cocaine, and 14.65 grams of fentanyl), results in a current base offense level of 28. After applying enhancements and acceptance points, Rainey has agreed to a Guidelines sentencing range of 151 to 188 months' imprisonment, with a mandatory minimum sentence of 60 months' imprisonment.

If the powder cocaine Guidelines were instead applied to the same amount of cocaine base, the base offense level would be 24, the total offense level would be 27, and the Guidelines sentencing range, based on a Criminal History Category of IV, would be 100 to 125 months' imprisonment.

The Court can and should, consistent with the law and current sentencing framework, consider the powder-to-cocaine base disparity in assessing the Section 3553(a) factors. *See Kimbrough v. United States*, 552 U.S. 85, 106-08 (2007); *United States v. Cavera*, 550 F.3d 180,

191-92 (2d Cir. 2008) (*en banc*). Based on consideration of the powder-to-cocaine base disparity and all the relevant factors under Section 3553(a) as set forth below, the Government believes that a below-Guidelines sentence of 100 months' imprisonment is appropriate in this case.

### ii.   The 3553(a) Factors

With respect to the Section 3553(a) factors, the Government notes first that the nature of Rainey's offense is serious. It is not in dispute that Rainey, along with co-defendant Frank Brown, a/k/a "Nitty," was a leader of the drug trafficking organization ("DTO") that is the subject of this matter. PSR ¶ 15. His leadership status is plain from a number of things, including: (1) his continued operation of the DTO from jail; and (2) his supplying of narcotics to a lower level drug dealer. *See* PSR ¶¶ 11, 19. In addition, Rainey was personally involved in selling narcotics to law enforcement on multiple occasions. Plea Tr. 37.

It is also not in dispute that Rainey made a credible threat of violence towards the confidential informant to whom he sold drugs, including by threatening to come after the confidential informant with a gun. PSR ¶ 20. For these reasons, a serious incarceratory sentence is appropriate.

Second, the instant matter is far from Rainey's first encounter with the law. As Probation notes, this case represents Rainey's fourteenth known criminal conviction. PSR at 25. Indeed, Rainey has been in and out of the criminal justice system for the last 30 years—his entire adult life. PSR ¶¶ 42-63. His criminal history includes multiple narcotics-related convictions, some which resulted in long terms of imprisonment. *Id.* A significant incarceratory sentence would send a clear message to Rainey and those similarly situated that this kind of recidivism will not be tolerated.

Third, a below-Guidelines sentence of 100 months' imprisonment would avoid unwarranted sentencing disparities among the defendants in this case. As the Court knows, Raymond Brown was sentenced to 28 months' imprisonment, Joseph Scott was sentenced to 18 months' imprisonment, Keith Glover was sentenced to 15 months' imprisonment, and Tonya Brown was sentenced to time served. The Government has recommended a sentence of *at least* 120 months' imprisonment for Frank Brown, a/k/a "Nitty," whom the Government views as the true ringleader of the charged DTO for the reasons indicated in the Government sentencing submission. (Docket Entry No. 207). Although Rainey threatened the confidential informant with violence, including by threatening to come after him with a gun, Frank Brown brought more people into the conspiracy, including his own wife; continued to manage the DTO for *months* from jail; dealt dangerous drugs out of the home he shared with his minor children and cooked up crack cocaine there, as well; and was reaping huge rewards, as evidenced by the significant amount of cash seized from his home and the car in which he was arrested.

In addition, although Frank Brown's upbringing was also tragic, Rainey's was devastating from day one. PSR ¶¶ 64-73. It is no surprise that he turned to a life of crime largely to support a drug habit that was essentially foisted upon him by his addict mother. This is a mitigating factor

███████████████████████ he Court should factor these considerations into its sentence.

## C. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence of 100 months' imprisonment.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _____

Benjamin Gianforti
Assistant United States Attorney
(646) 856-5190

cc:    Larry Sheehan, Esq., counsel to Pedro Rainey (by ECF & email)